1

2

3

4

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 19, 2023

SEAN F. McAVOY, CLERK

5        UNITED STATES DISTRICT COURT

6        EASTERN DISTRICT OF WASHINGTON

7   UNITED STATES OF AMERICA,          No. 1:20-cr-02049-MKD

8                          Plaintiff,   ORDER ON DEFENDANT'S
                                        MOTION TO DISMISS COUNTS 3,
9        v.                             4, AND 5, UNITED STATES'
                                        MOTION FOR ADMISSION OF
10  MIGUEL URBINA,                      EVIDENCE PURSUANT TO FED. R.
                                        EVID. 414, AND DEFENDANT'S
                         Defendant.     MOTION TO SEVER
11

12                                      **ECF Nos. 83, 84, 116, 117, 118, 119**

13        On February 28, 2023, the Court held a hearing and heard argument on the

14  pending pretrial motions.  Defendant Miguel Urbina was present and represented

15  by Assistant Federal Defenders Craig Webster and Jennifer Barnes.  Assistant

16  United States Attorney Michael Murphy appeared on behalf of the United States.

17  For the reasons discussed below, the Court grants in part and denies in part

18  Defendant's Motion to Dismiss Counts 3, 4, and 5, ECF No. 116; grants in part and

19  denies in part the United States' Motion for Admission of Evidence Pursuant to

20

ORDER – 1

Fed. R. Evid. 414, ECF Nos. 83, 118; and denies Defendant's Motion to Sever Offenses, ECF Nos. 84, 119.

## PROCEDURAL BACKGROUND

On December 8, 2020, the Grand Jury returned an Indictment, charging Defendant with one count of Production and Attempted Production of Child Pornography in violation of 18 U.S.C. § 2251(a), (e), and one count of Receipt of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2), (b)(1).  ECF No. 1.

In July 2022, the United States filed a Motion for Admission of Evidence Pursuant to Fed. R. Evid. 414, ECF No. 83, and Defendant filed a Motion to Sever, ECF No. 84.  Both parties filed responses to the motions.  ECF Nos. 85, 86.  Given the interconnected nature of the issues presented in these two motions, the Court ordered Defendant's motion held in abeyance pending the hearing on the admissibility of the proffered Fed. R. Evid. 414 evidence.  ECF No. 95.

On October 12, 2022, the Grand Jury returned a Superseding Indictment, charging Defendant with four additional counts.  *See* ECF No. 98.  Defendant is presently charged with the following: four counts of Production and Attempted Production of Child Pornography in violation of 18 U.S.C. § 2251(a), (e) (Counts 1, 3-5); one count of Receipt of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2), (b)(1) (Count 2); and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2) (Count 6).

*See* ECF No. 98.  Given the new charges, the parties requested an opportunity to file supplemental briefs on the pending motions.  ECF No. 104 at 1-2; *see* ECF No. 101.

On October 18, 2022, Defendant was arraigned on the Superseding Indictment.  ECF No. 111 at 1.  Following arraignment, the Court issued its Tenth Case Management Order in the matter, setting a motion hearing on December 20, 2022.  ECF No. 112 at 3, 16.  In that order, the Court also extended the deadline for the filing of pretrial motions.  ECF No. 112 at 3, 16.

On November 15, 2022, Defendant filed a Motion to Dismiss Counts 3, 4, and 5 of the Superseding Indictment, ECF No. 116; and supplemental responses to the United States' Motion for Admission of Evidence Pursuant to Fed. R. Evid. 414, ECF Nos. 117,[1] 124, and his Motion to Sever Offenses, ECF No. 119.  The United States filed an Amended Motion for Admission of Evidence Pursuant to Fed. R. Evid. 414.  ECF No. 118.  The parties filed various responses and replies.

---

[1] Defendant's filing, ECF No. 117, is styled both as a supplemental response to the United States' Motion for Admission of Evidence Pursuant to Fed. R. Evid. 414 and also as a motion in limine to exclude the same evidence the United States seeks to offer through its motion.  The Court rules on the evidence in the context of the United States' motion to avoid duplication.

*See* ECF Nos. 117, 123, 124, 125, 127, 128.  Briefing was complete in early December 2022.

At the December 15, 2022 status hearing, Defendant moved to continue the motion hearing scheduled for December 20, 2022, and his trial scheduled for January 23, 2023.  ECF No. 131; *see* ECF No. 135 at 1-2.  The Court granted Defendant's motion, continuing the motion hearing to February 22, 2023, and the trial date.  ECF No. 135 at 3.  Due to a conflict with the Court's schedule involving a jury trial, the motion hearing was continued to February 28, 2023.  ECF No. 145.

On February 28, 2023, the Court heard argument on Defendant's Motion to Dismiss Counts 3, 4, and 5, ECF No. 116; United States' Motion for Admission of Evidence Pursuant to Fed. R. Evid. 414 and its amendment, ECF Nos. 83, 118; and Defendant's Motion to Sever Offenses and the supplement, ECF Nos. 84, 119. The Court also reviewed[2] each of the exhibits listed in the United States' Second

---

[2] In its Second Amended Exhibit List, ECF No. 151, the United States identified the exhibits it intends to offer at trial, many of which are clipped portions of videos seized during the execution of a search warrant and the subsequent forensic examination of digital evidence.  In this Order, the Court relies on only the identified clips of the videos.

ORDER – 4

Amended Exhibit List, ECF No. 151.[3]

## DEFENDANT'S MOTION TO DISMISS COUNTS 3, 4, AND 5

Defendant moves to dismiss Counts 3, 4, and 5 of the Superseding Indictment, which charge Defendant with Production and Attempted Production of Child Pornography.  ECF No. 98 at 1, 3-5.  Defendant contends that Exhibits 66, 67, and 68, which are the video clips supporting the counts, do not show a minor engaged in sexually explicit conduct as defined by 18 U.S.C. § 2256(2)(A).  ECF No. 116 at 9-19.  Thus, he contends that as a matter of law, the Counts should be dismissed.  ECF No. 116 at 28.

**A. The Charges**

Count 3 charges:

> On or about February 23, 2007, within the Eastern District of Washington, the Defendant, MIGUEL URBINA, did knowingly employ and use at least one minor to engage in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2)(A), in a bathroom at a Wal-Mart store, for the purpose of producing a visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transmitted using any means and facility of interstate commerce, and such visual depiction was produced using materials that had been mailed, shipped, and transported in and affecting interstate

_____

[3] At the conclusion of the February 28 hearing, the Court reviewed *in camera* all exhibits listed in ECF No. 151 that had not been shown to the Court during the hearing.  The *in camera* review occurred in the presence of an FBI Agent and a defense investigator, a procedure agreed to by the parties.

ORDER – 5

and foreign commerce by any means, including by a computer, and attempted to do the same, and did aid and abet the same, in violation of 18 U.S.C. §§ 2 and 2251(a), (e).

ECF No. 98 at 3. Count 4 alleges the same conduct on the same day, February 23, 2007, at Union Gap Mall. ECF No. 98 at 4. Count 5 alleges the same conduct on March 30, 2007, at Miner's Restaurant. ECF No. 89 at 4-5.

The United States proffers[4] that in each of these instances Defendant directed his then-girlfriend, T.W., to go into the women's restroom of the identified business and surreptitiously film unsuspecting individuals using the restroom. ECF No. 122 at 2. He directed her to target young girls, who were under the age of 18, and adult women if they were "really pretty" or "really skinny." The recordings captured minors using the restrooms at these establishments. ECF No. 122 at 2.

---

[4] In this Order, the Court relies on information the United States proffered in its response to Defendant's motion to dismiss, ECF No. 122, its original notice and motion to admit propensity evidence, ECF No. 83, the supplemental notice, ECF No. 118, its supplemental briefing, ECF No. 155, at the February 28, 2023 hearing, and from the Court's review of the exhibits listed in the United States' Second Amended Exhibit List, ECF No. 151.

ORDER – 6

**B. Legal Standard**

*1. Pretrial Motion to Dismiss*

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Said another way, the trial court may rule on a pretrial motion "if it involves questions of law rather than fact." *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (citing *United States v. Korn*, 557 F.2d 1089, 1090 (5th Cir. 1977), *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976), *United States v. Miller*, 491 F.2d 638, 647 (5th Cir. 1974)); *see* Fed. R. Crim. P. 12(d). This rule applies to motions to dismiss. *United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987).

The trial court "may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Shortt Acct. Corp.*, 785 F.2d at 1452 (quoting *Jones*, 542 F.2d at 664 (footnote omitted)). Conversely, "[i]f the pretrial claim is 'substantially founded upon and intertwined with' evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred." *Id.* (quoting *United States v. Williams*, 644 F.2d 950, 952–53 (2nd Cir. 1981)).

### 2.  Sexually Explicit Conduct

Production of child pornography requires in pertinent part: the use at least one minor to engage in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2)(A), for the purpose of producing a visual depiction of such conduct.  18 U.S.C. § 2251(a).  "Sexually explicit conduct" is defined as "actual or simulated-- (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the anus, genitals, or pubic area of any person[,]" with respect to the production or attempted production of child pornography. 18 U.S.C. § 2256(2)(A).

Defendant contends that the videos which are the subject of Counts 3, 4, and 5 (Exhibits 66, 67, and 68, respectively) do not contain a "lascivious exhibition of the anus, genitals, or pubic area of any" minor pursuant to 18 U.S.C. § 2256(2)(A)(v), which is the relevant portion of the statute.  ECF No. 116 at 8-9. Section 2256 does not define anus, genitals, or pubic area.  Accordingly, the Court will look to their ordinary meaning in its analysis.  *FCC v. AT & T Inc.*, 562 U.S. 397, 403 (2011); *see generally United States v. Anderson*, 46 F.4th 1000 (9th Cir. 2022).

Determining whether an image or video depicts a lascivious exhibition of the anus, genitals or pubic area is generally a question of fact.  *United States v. Arvin*,

900 F.2d 1385, 1390 (9th Cir. 1990) ("This circuit has held that lascivious is a commonsensical term and that whether a given photo is lascivious is a question of fact." (internal quotation marks and citation omitted)).  Indeed, the Ninth Circuit, like many of the other circuits, has concluded that "whether the item to be judged is lewd, lascivious, or obscene is a determination that lay persons can and should make."  *Id.*; *see United States v. Thoma*, 726 F.2d 1191, 1200 (7th Cir. 1984) *cert. denied*, 467 U.S. 1228 (1984); *United States v. Thomas*, 613 F.2d 787, 794 (10th Cir. 1980) *cert. denied*, 449 U.S. 888 (1980); *United States v. Nemuras*, 567 F.Supp. 87, 90 (D. Md. 1983), *aff'd*, 740 F.2d 286 (4th Cir. 1984); *see also United States v. Cutting*, 538 F.2d 835, 840 (9th Cir. 1976) (en banc) ("female nudes so posed that a jury could quickly find that the sole purpose was to emphasize a lewd portrayal of the genitals"), *cert. denied*, 429 U.S. 1052 (1977).  Accordingly, whether a photo or video is lascivious is a question for the jury.  *Arvin*, 900 F.2d at 1390; *see United States v. Overton*, 573 F.3d 679, 686–87 (9th Cir. 2009) ("the

1   trier of fact will often look to [the *Dost*[5]] factors to determine whether a visual

2   depiction of a minor constitutes a 'lascivious exhibition of the genitals or pubic

3   area' in the particular case").

4   **C. Discussion**

5       Exhibits 66 (Count 3), 67 (Count 4) and 68 (Count 5) are videos that were

6   allegedly filmed by T.W. at Defendant's direction.  Defendant's face can be seen

7   toward the beginning of Exhibits 66 and 67 following his manipulation of the

8   camera's placement inside a bag or purse.  These two videos then depict an

9   individual, presumably T.W., in light-colored pants walking through a commercial

10

_____

11  [5] *United States v. Dost*, 636 F.Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom.*

12  *United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987).  The six factors

13  enumerated in *Dost* are: 1) whether the focal point of the visual depiction is on the

14  child's genitalia or pubic area; 2) whether the setting of the visual depiction is

15  sexually suggestive, i.e., in a place or pose generally associated with sexual

16  activity; 3) whether the child is depicted in an unnatural pose, or in inappropriate

17  attire, considering the age of the child; 4) whether the child is fully or partially

18  clothed, or nude; 5) whether the visual depiction suggests sexual coyness or a

19  willingness to engage in sexual activity; 6) whether the visual depiction is

20  intended or designed to elicit a sexual response in the viewer.

ORDER – 10

place of business before entering a restroom.  In each video, T.W. enters a stall

adjacent to the larger, handicap accessible stall.  The bag within which the camera

is situated is then placed on the floor between stalls, facing the toilet in the

accessible stall.  Exhibit 68 does not include the manipulation of the camera or

depict anyone walking through a commercial place of business.  Instead, it begins

within the restroom.

### 1.  Count 3 (Exhibit 66)

In Exhibit 66, a young girl urinating is depicted.  Visible on the video is the

young girl's profile, including a visual of the side of the young girl's unclothed

buttocks.  The video does not depict any exhibition of the anus,[6] genitals,[7] or pubic

---

[6] *Compare Anus*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/anus (last visited Mar. 11, 2023) ("the posterior opening of the digestive tract"), *with Buttock*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/buttock (last visited Mar. 11, 2023) ("the back of a hip that forms one of the fleshy parts on which a person sits").

[7] *Genitals*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/genitals (last visited Mar. 11, 2023) ("the sexual or reproductive organs located on the outside of the body").

ORDER – 11

area[8] of the young girl.  Accordingly, this video cannot as a matter of law be found to contain sexually explicit conduct under 18 U.S.C. § 2256(2)(A)(v).  Because Exhibit 66 does not contain sexually explicit conduct, Defendant as a matter of law cannot be found to have produced child pornography with respect to this exhibit. *See Arvin*, 900 F.2d at 1391 (noting the exhibition of a minor's anus, genitals, or pubic area is "a threshold element contained in the language of § 2256(2)(E) itself, distinct from the additional requirement that the depiction be 'lascivious'").

The Court's determination involves a mixed question of fact and law.  The trial court "may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact."  *Shortt Acct. Corp.*, 785 F.2d at 1452 (quoting *Jones*, 542 F.2d at 664 (footnote omitted)).  The Court grants Defendant's Motion to Dismiss with respect to the charge of

---

[8] *Pubic*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/pubic (last visited Mar. 11, 2023) ("of, relating to, or situated in or near the region of the pubes or the pubis"); *see Pubis*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/pubis (last visited Mar. 11, 2023) ("the ventral and anterior of the three principal bones composing either half of the pelvis").

ORDER – 12

production in Count 3, because Exhibit 66 does not contain the exhibition of a

minor's anus, genitals, or pubic area, a threshold requirement in § 2256(2)(A)(v).

However, the Grand Jury also indicted Defendant on a theory of attempted[9]

production of child pornography.  "'[A]ttempt' is a term that at common law

requires proof that the defendant had the specific intent to commit the underlying

crime and took some overt act that was a substantial step toward committing that

crime." *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1192 (9th Cir. 2000)

(en banc); *United States v. Snell*, 627 F.2d 186, 187 (9th Cir. 1980) ("A conviction

for attempt requires proof of culpable intent and conduct constituting a substantial

step toward commission of the crime that strongly corroborates that intent.").  A

substantial step consists of an action which "cross[es] the line between preparation

and attempt by unequivocally demonstrating that the crime will take place unless

interrupted by independent circumstances." *United States v. Goetzke*, 494 F.3d

---

[9] "There is no general federal 'attempt' statute." *United States v. Hopkins*, 703

F.2d 1102, 1104 (9th Cir. 1983).  "[Defendant] therefore can only be found guilty

of an attempt to [produce child pornography] if the statute defining the offense

also expressly proscribes an attempt." *Id.* (citations omitted).  The statute under

which Defendant is charged in Counts 3, 4, and 5—18 U.S.C. § 2251—expressly

proscribes an attempt.  § 2251(e).

ORDER – 13

1231, 1237 (9th Cir. 2007) (per curiam) (quoting *United States v. Nelson*, 66 F.3d

1036, 1042 (9th Cir. 1995)).

Whether Defendant's purported actions—positioning the camera, directing

T.W. to record videos in the restroom of young girls, and thereby capturing this

video which includes a depiction of a young girl urinating from the side—

constitute a substantial step toward the commission of production of child

pornography is a question that is "substantially founded upon and intertwined with

evidence" underlying Count 3 and in relation to the other five counts. *Shortt Acct.

Corp.*, 785 F.2d at 1452 (internal quotation marks omitted).  Accordingly, the

Court finds that this claim cannot be ruled on at the pretrial stage as it "falls within

the province of the ultimate finder of fact," so it "must be deferred." *Id.*  Thus, the

charge of attempted production may remain and be presented to the jury.  The

Court denies Defendant's Motion to Dismiss with respect to the attempted

production of child pornography in Count 3.

   *2.  Count 4 (Exhibit 67) and Count 5 (Exhibit 68)*

In Exhibit 67, the video depicts prepubescent girls urinating and wiping.

Similar to Exhibit 66, Exhibit 67 depicts these girls from a side view in which the

side of the young girls' unclothed buttocks are visible.  Exhibit 67 is different from

Exhibit 66, however, because Exhibit 67 also depicts the young girls turn toward

the camera, which makes their pubic area plainly visible on the video.  Unlike

1    Exhibit 66, Exhibit 67 contains the requisite exhibition of the pubic area.  The

2    question of whether the exhibition is lascivious, is a question for the jury.  *Arvin*,

3    900 F.2d at 1390.  Thus, the Court denies Defendant's Motion to Dismiss with

4    respect to the charge of production in Count 4.

5         Exhibit 68 also depicts prepubescent girls urinating and wiping.  Again, the

6    sides of young girls' unclothed buttocks are visible, and the video depicts young

7    girls turning toward the camera, making their pubic area plainly visible.  Like

8    Exhibit 67, Exhibit 68 contains the requisite exhibition of the pubic area.  The

9    question of whether the exhibition is lascivious is a question for the jury.  *Id.*  The

10   Court denies Defendant's Motion to Dismiss with respect to the production charge

11   in Counts 4 and 5.

12        The Court notes that Counts 4 and 5 are also charged as attempted

13   production of child pornography.  Whether Defendant's purported actions—

14   positioning the camera, directing T.W. to record videos in the restroom of young

15   girls, and thereby capturing this video which includes a depiction of young girls

16   urinating from the side as well as their pubic areas—constitute a substantial step

17   toward the commission of production of child pornography is a question that is

18   "substantially founded upon and intertwined with evidence" underlying Counts 4

19   and 5 and in relation to the other four counts.  *Shortt Acct. Corp.*, 785 F.2d at 1452

20   (internal quotation marks omitted).  Accordingly, the Court finds that these claims

cannot be ruled on at the pretrial stage as they "fall[] within the province of the ultimate finder of fact." *Id.* Thus, Court denies Defendant's Motion to Dismiss with respect to the attempted production of child pornography in Counts 4 and 5.

## UNITED STATES' MOTION TO ADMIT EVIDENCE PURSUANT TO FED. R. EVID. 414

The United States seeks to admit evidence of Defendant's prior sexual misconduct pursuant to Fed. R. Evid. 414 as to all six counts. *See* ECF Nos. 83, 118. The Court analyzes the evidence as five categories: (1) prior uncharged sexual assaults of A.G. and M.M., (2) testimony of T.W. regarding Defendant's prior possession of child pornography, (3) testimony of T.W. regarding making upskirting videos and filming videos in public bathrooms; (4) photos and videos alleged to be child pornography which the United States seeks to admit only under Fed. R. Evid. 414; and (5) the United States' direct evidence supporting the six charged counts.

**A. United States' Proffer**

*1. Prior Uncharged Sexual Assaults of A.G. and M.M.*

Three sisters, including A.G. and M.M., stayed the night at Defendant and T.W's (his then-girlfriend) residence sometime between 2001 and 2003. *See* ECF No. 118 at 3-4. At that time, A.G. was between the ages of ten and twelve, M.M. was between the ages of six and eight, and Defendant was between the ages of

sixteen and eighteen. ECF No. 118 at 4. A.G., M.M., and their sister slept in the same bed as T.W. and Defendant. ECF No. 118 at 3-4. A.G. reported that Defendant reached over whomever was sleeping between them and began touching her underwear. ECF No. 118 at 4. At the February 28 hearing, the United States proffered that A.G. reported that Defendant then began touching her underneath her underwear and subsequently penetrated her vagina with his finger. M.M. reported that Defendant reached over whomever was sleeping between them and put his hand under her underwear, touching her external genitalia. ECF No. 118 at 4. At the February 28 hearing, the United States proffered that M.M. reported that she tried to move away from Defendant, but Defendant pulled her back toward him.

The United States proffered that T.W. is expected to testify that one night when A.G. and M.M. were staying at her and Defendant's residence, she awoke to one of the girls saying, "No, no, stop, stop." ECF No. 118 at 3. Upon hearing the girl's outcry, T.W. purportedly asked Defendant what was going on, and he is said to have claimed to be tickling whoever cried out. ECF No. 118 at 3-4.

### 2. *T.W.'s Testimony Regarding Defendant's Possession of Child Pornography*

The United States proffered that T.W. is expected to testify that she saw Defendant downloading, what she described as child pornography, onto CDs when

they were dating in approximately 2003.[10]  *See* ECF No. 118 at 3-4.  The United States proffered at the February 28 hearing that T.W. believed these photos or videos to be child pornography because she saw children in lingerie or nude children in provocative poses and some of these photos and videos contained a watermark with the word "lolita," and that T.W. believed Defendant obtained these photos or videos through a peer-to-peer network.

### 3. *T.W.'s Testimony Regarding Upskirting Videos and Recording in Public Bathrooms*

Further, the United States proffered that T.W. is expected to testify that when she was approximately fifteen years old, Defendant instructed her to record videos "upskirting," which is essentially taking videos under the skirts of females, and of individuals, including minors, urinating in public restrooms (*e.g.* Exhibits 66, 67, and 68).  ECF No. 118 at 4.

---

[10] In its supplemental notice, the United States proffered that "T.W. told investigators that Defendant showed her his collection of child pornography." ECF No. 118 at 3.  However, at the February 28 hearing, the United States stated that Defendant never showed her any videos or photos.  Given the United States' subsequent statement, the Court will not address this evidence in its analysis.

ORDER – 18

### 4. *Photos and Videos for Solely Fed. R. Evid. 414 Purposes*

The United States intends to offer Exhibits 16 to 18 and Exhibits 69 to 72 pursuant to Fed. R. Evid. 414.

Exhibit 16 contains footage that is being captured from near the floor. The angle at which the footage is depicted would suggest that the camera is in a bag that is being carried. Specifically, the video depicts the legs and feet of the person who is carrying the bag following a girl in a floral dress into a restroom in a commercial place of business. The bag in which the camera is located is then set onto the floor between the stalls, so the camera is facing into the adjacent stall. The video depicts a young girl who pulls down her underwear and sits on the toilet. The young girl's unclothed buttocks can be viewed from the side, but the video does not depict an exhibition of the girl's anus, genitals, or pubic area. Then, the young girl wearing the floral dress enters the adjacent stall visible on the camera's footage. The United States concedes that this young girl's "genitalia or buttocks do not become visible." ECF No. 155 at 6.

Exhibits 17 and 18 contain footage that is being captured from near the floor. The angle at which the footage was captured would suggest that the camera is in a bag that is being carried. Each video depicts the legs of the person carrying the bag following an adult woman in a skirt around a store. The person holding the bag seems to be placing the bag near the women's legs such that the camera will be

ORDER – 19

recording directly up the women's skirts. The person holding the bag attempts to do this a few times. At one point, one of the women's buttocks are visible.

Exhibit 69 contains footage that is the same content as that which is depicted in Exhibit 16. ECF No. 155 at 18. However, Exhibit 69 was found separate and apart from that of Exhibit 16 on Defendant's external hard drive and Exhibits 16 and 69 had different file names. ECF No. 155 at 18.

Exhibits 70 through 72 are similar to Exhibits 16, 66, 67, 68, and 69. Each depicts a side view of a toilet, as if the camera is sitting in a bag on the floor between stalls. Each video captures individuals using the toilet as well. Exhibit 70 depicts a girl using the toilet from the side. The side of the girl's unclothed buttocks are visible. Another girl enters the stall and uses the toilet, and the side of her buttocks are also visible. Exhibit 71 depicts a prepubescent boy standing near the toilet. His penis is visible throughout the video. This video also includes an adult using the toilet. Exhibit 72 depicts a young girl using the toilet from the side; the side of her buttocks are visible. It also captured two other individuals using the restroom. Their ages are unknown.

### 5. Direct Evidence of Counts

The United States also argues the direct evidence supporting each count is cross admissible under Fed. R. Evid. 414 as to the other five counts. The Court

discusses these exhibits in detail in Section E(1) below, so it will not describe them here.

**B. Legal Standard**

Fed. R. Evid. 414 permits a trial court to admit evidence "that the defendant committed any other child molestation" in that defendant's criminal case in which he is accused of child molestation, so long as it is relevant. Fed. R. Evid. 414(a). For evidence to be admissible under this rule, "[f]irst, the defendant must be accused of an offense of . . . child molestation; second, the evidence being proffered must relate to the commission of another offense of . . . child molestation; and last, the evidence has to be relevant." *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000).

The rule defines "child molestation" as a federal or state crime that involves:

(A) any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child; (B) any conduct prohibited by 18 U.S.C. chapter 110;[11] (C) contact between any part of the defendant's body — or an object — and a child's genitals or anus; (D) contact between the defendant's genitals or anus and any part of a child's body; (E) deriving sexual

---

[11] The Court notes that Fed. R. Evid. 414(d)(2)(B)'s definition of child molestation does not require the conduct to include a child as defined by the rule. Instead, the offenses and other acts of the defendant only need be committed against a minor. *See* 18 U.S.C. §§ 2251-2252C. This chapter defines a "minor" as "any person under the age of eighteen years." § 2256(1).

ORDER – 21

pleasure or gratification from inflicting death, bodily injury, or physical pain on a child; or (F) an attempt or conspiracy to engage in conduct described in subparagraphs (A)–(E).

Fed. R. Evid. 414(d)(2). Under the rule, a "child" is defined as "a person below the age of 14." Fed. R. Evid. 414(d)(1).

There is a presumption in favor of admission of any evidence that meets Fed. R. Evid. 414's requirements. *United States v. Lemay*, 260 F.3d 1018, 1032 (9th Cir. 2001). This presumption exists despite the high prejudice associated with such evidence. *Id.* This rule and its counterparts "were explicitly designed to allow the introduction of evidence of prior sexual crimes in order to prove propensity." *Id.* (citing 140 Cong. Rec. H5437–03, *H5438 (daily ed. June 29, 1994) (statement of Rep. Kyl) ("In sex-related crimes, it can be particularly useful to demonstrate a propensity of the accused to commit similar prior offenses.")).

This presumption is not without limits. Evidence that meets Fed. R. Evid. 414's requirements is not automatically admissible, because it is still subject to Fed. R. Evid. 403.[12] *Id.* at 1022, 1026-27. Indeed, the trial court must

---

[12] "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

ORDER – 22

conscientiously apply Fed. R. Evid. 403 to protect a defendant from the introduction of evidence that jeopardizes his right to a fair trial. *Id.* at 1022 ("Rule 414 is not a blank check entitling the government to introduce whatever evidence it wishes, no matter how minimally relevant and potentially devastating to the defendant."). Accordingly, "a court should pay 'careful attention to both the significant probative value and the strong prejudicial qualities' of that evidence" when analyzing it under Fed. R. Evid. 403. *Id.* at 1027 (quoting *Doe by Rudy–Glanzer*, 232 F.3d at 1268). The Ninth Circuit has adopted a list of non-exhaustive factors—that were articulated by the Tenth Circuit in *United States v. Guardia*, 135 F.3d 1326 (10th Cir. 1998)—which must be considered in determining whether to admit evidence of a defendant's prior acts under Fed. R. Evid. 414. *Lemay*, 260 F.3d at 1027-28. Now known as the *LeMay* factors, they are:

> (1) the similarity of the prior acts to the acts charged, (2) the closeness in time of the prior acts to the acts charged, (3) the frequency of the prior acts, (4) the presence or lack of intervening circumstances, and (5) the necessity of the evidence beyond the testimonies already offered at trial.

*Id.* at 1028 (internal quotation marks omitted). Given "the sensitive nature of the evidence proffered, it is important that the district court fully evaluate the factors enumerated above, and others that might arise on a case-by-case basis, and make a clear record concerning its decision whether or not to admit such evidence." *Doe by Rudy–Glanzer*, 232 F.3d at 1268-69.

ORDER – 23

**C. Discussion of whether the Proffered Evidence Meets Fed. R. Evid. 414's Definition of Child Molestation**

The six charges Defendant faces fall within the definition of child molestation as defined in Fed. R. Evid. 414(d)(2)(B).

*1. Prior Uncharged Sexual Assaults of A.G. and M.M.*

The United States proffers that Defendant digitally penetrated A.G. when she was between 10 and 12 years old and he was more than three years older than her. Such conduct would qualify as either first- or second-degree child molestation, depending on A.G.'s age,[13] under Washington law. The United States proffers that Defendant touched M.M.'s genitalia when she was between 6 and 8

---

[13] A person commits first-degree child molestation when "the person has . . . sexual contact with another who is less than twelve years old and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083. A person commits second-degree child molestations by committing the same act "with another who is at least twelve years old but less than fourteen years old and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.086. Washington defines "sexual contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party . . ." RCW 9A.44.010(13).

ORDER – 24

1    years old and Defendant was more than three years older than her.  Such conduct

2    qualifies as first-degree child molestation under Washington law.  *See* RCW

3    9A.44.086, 9A.44.010(13).  Because these actions constitute a state crime

4    involving contact between Defendant's hand and both A.G.'s and M.M.'s genitals,

5    and both victims were under 14 years old when this occurred, this conduct is child

6    molestation under Fed. R. Evid. 414(d)(2)(C).  The second requirement of

7    admissibility under Fed. R. Evid. 414 has been satisfied.  The Court will consider

8    the third prong of the rule's test and analyze the *Lemay* factors below.

9        At the February 28 hearing, Defendant advised the Court that if the Court

10   finds A.G. and M.M.'s testimony to be admissible, he does not object to the fact

11   that T.W. heard either A.G. or M.M. saying, "No, no, stop, stop," being admitted.

12       *2.  T.W.'s Testimony Regarding Defendant's Prior Possession of Child*

13            *Pornography*

14       The United States represents that T.W. believes the photos or videos she saw

15   in approximately 2003 to be child pornography.  The United States is not in the

16   possession of the photos or videos T.W. observed.  However, the United States'

17   description of the images and videos T.W. saw in 2003 are substantially similar to

18   certain images and videos found in Defendant's possession in 2020 which are

19   included in the United States Second Amended Exhibit List and were reviewed by

20   the Court *in camera*.  For example, Exhibits 12b, 13c, 13d, 13e, 14c, 15b, and 15c

ORDER – 25

contain young girls, most of whom are prepubescent, in costumed lingerie in an array of sexually provocative poses and in various state of undress such that their undeveloped breasts, pubic areas, and anuses are visible in different images. Additionally, some of the videos had titles or file paths with the word "lolita" in them.  *See* ECF No. 151 at 3-4.

T.W.'s recollection of Defendant's previous possession of child pornography qualifies as child molestation under Fed. R. Evid. 414(d)(2)(B), because it is a federal crime prohibited by 18 U.S.C. Chapter 110: 18 U.S.C. § 2252A(a)(5)(B).  The second requirement of admissibility under Fed. R. Evid. 414 has been satisfied.  The Court will consider the third prong of the rule's test and analyze the *Lemay* factors below.

3.  *T.W.'s Testimony Regarding Upskirting Videos and Recording in Public Bathrooms*

The allegations that Defendant directed T.W. to record individuals, including minors, urinating in public restrooms constitute an offense that qualifies as attempted child molestation as defined under the rule.  The Court finds the purported actions—the positioning the camera at the beginning of Exhibits 66 and 67 and directing T.W. to record Exhibits 16 and 66 through 72 of young girls in a public restroom and thereby capturing multiple videos depicting young girls urinating from the side or the exhibition of readily-apparent prepubescent

children's genitals—qualify as an attempt to produce child pornography in violation of 18 U.S.C. § 2251(e).  Accordingly, this video meets the definition of child molestation under Fed. R. Evid. 414(d)(2)(F).  Because the second requirement of admissibility under Fed. R. Evid. 414 has been satisfied, the Court will consider the third prong of the rule's test and analyze the *Lemay* factors below.

The Court notes that this analysis does not include T.W.'s testimony regarding Defendant directing T.W. to upskirt adult women.  As discussed in Subsection 4(b) below, the Court finds that the Exhibits 17 and 18 do not contain acts that qualify as child molestation under Fed. R. Evid. 414.  Accordingly, the Court denies the United States' motion with respect to T.W.'s anticipated testimony regarding any "upskirting" of the adult women in Exhibit 17 and 18 or any other adults.

### 4.  *Photos and Videos Offered Pursuant to Fed. R. Evid. 414*

#### a.  Exhibit 16

Exhibit 16 is similar to Exhibit 66 in that the bag in which the camera is located is placed on the floor between the stalls, and the camera is facing into the adjacent stall with the side of the toilet in view.  Exhibit 16 is also similar to Exhibit 66 in that it captures a young girl urinating on the toilet from the side, so her unclothed buttocks are visible.  There is no exhibition of the girl's anus, genitals, or pubic area, so this video, like Exhibit 66, cannot, as a matter of law, be

considered production of child pornography.  However, like Exhibit 66, recording Exhibit 16 may constitute an attempt to do the same.

While Defendant is not seen positioning the camera at the beginning of Exhibit 16, a man's legs are visible in the video.  These male legs can be observed close to another individual's legs in light-colored pants, presumably T.W.'s, walking through a commercial place of business before entering a restroom. Additionally, the United States proffered that T.W. will testify that Defendant directed her to record this video.  The fervor in which T.W. follows the young girl, at Defendant's direction, into the restroom before capturing the side view of a young girl lends itself to the Court's finding that these actions constitute a substantial step to production of child pornography in violation of 18 U.S.C. § 2251(e).  Accordingly, this video meets the definition of child molestation under Fed. R. Evid. 414(d)(2)(F).  Because the second requirement of admissibility under Fed. R. Evid. 414 has been satisfied, the Court will consider the third prong of the rule's test and analyze the *Lemay* factors below.

b.  Exhibits 17 and 18

The United States concedes that Exhibits 17 and 18 depict adult women. ECF No. 155 at 6, 7; ECF No. 118 at 4.  As such, these two videos do not contain children as defined under Fed. R. Evid. 414(d)(1) (*i.e.*, the females are not under fourteen years old).  Because children are not depicted in these two videos, they

cannot meet the definition of child molestation under Fed. R. Evid. 414(d)(2)(A), (C)-(E).  They do not meet the rule's definition of child molestation under Fed. R. Evid. 414(d)(2)(B) either, because they do not include a minor as defined by 18 U.S.C. § 2256(1) (*i.e.*, the females are not under eighteen years old).  Nor do these videos capture an attempt to "upskirt" any children or minors, so these videos do not meet the rule's definition of child molestation under Fed. R. Evid. 414(d)(2)(F).

The United States' evidence is insufficient for the Court to find that the actions in these videos qualify as child molestation under the rule.  Because the second requirement of admissibility under Fed. R. Evid. 414 has not been satisfied, the Court need not consider the third prong of the rule's test nor analyze the *Lemay* factors.  Thus, the Court denies the United States' motion with respect to Exhibits 17 and 18.

   c.  Exhibit 69

Because Exhibit 69 contains footage that is the same content as that which is depicted in Exhibit 16, the Court finds that this exhibit meets the definition of child molestation for the same reason as Exhibit 16.  Because the second requirement of admissibility under Fed. R. Evid. 414 has been satisfied, the Court will consider the third prong of the rule's test and analyze the *Lemay* factors below.

ORDER – 29

d.  Exhibit 71

Exhibit 71 depicts a prepubescent boy standing near the toilet, and his penis is visible throughout the video.  Thus, it contains an exhibition of a minor's genitals.  This video is also purported to have been recorded due to Defendant's directions to T.W.  This fact, taken together with the facts that Defendant purportedly directed T.W. to record numerous videos, including Exhibits 16, 66 to 70 and 72, which all capture young girls, some of whom are readily identifiable as prepubescent, makes the Court of the opinion that this conduct, like the conduct in Exhibits 16 and 69, qualify at least as an attempt to produce child pornography in violation of 18 U.S.C. § 2251(e).  Accordingly, this video meets the definition of child molestation under Fed. R. Evid. 414(d)(2)(F).  Because the second requirement of admissibility under Fed. R. Evid. 414 has been satisfied, the Court will consider the third prong of the rule's test and analyze the *Lemay* factors below.

e.  Exhibits 70 and 72

Unlike Exhibit 71, Exhibits 70 through 72 do not contain an exhibition of the young person's anus, genitals, or pubic area; only visible are the side of the young girls' buttocks while each uses the toilet.  While these videos do not contain the requisite exhibition, these videos are also purported to have been recorded due to Defendant's directions to T.W.  This fact, taken together with the facts that Defendant purportedly directed T.W. to record similar videos discussed above,

most of which capture young girls but includes one boy, some of whom are readily

identifiable as prepubescent, makes the Court of the opinion that this conduct, like

the conduct in Exhibits 16 and 69, qualify as an attempt to produce child

pornography in violation of 18 U.S.C. § 2251(e).  Accordingly, this video meets

the definition of child molestation under Fed. R. Evid. 414(d)(2)(F).  Because the

second requirement of admissibility under Fed. R. Evid. 414 has been satisfied, the

Court will consider the third prong of the rule's test and analyze the *Lemay* factors

below.

### f.  Adults in Exhibits 16 and 69-72

The Court notes that there are adults depicted in some of the videos

discussed in this section.  The Court's ruling of admissibility does not extend to

any portion of a video in which there is *only* an adult depicted.  Accordingly, the

Court denies the United States' motion with respect to any portion of a video in

which there is only an adult depicted.  The United States is required to edit

whichever videos contain portions in which an adult is the sole person depicted in

the video to remove the adults.

### 5. *Direct Evidence of Counts*

The United States also argues the direct evidence supporting each individual

count is cross admissible under Fed. R. Evid. 414 as to the remaining five counts.[14]

_____

[14] This argument is also relevant to the motion for severance and is discussed there.

ORDER – 31

1    Given each count falls under Chapter 110, Defendant's charges fall within the

2    definition of child molestation as defined in Fed. R. Evid. 414(d)(2)(B) and the

3    evidence supporting those counts do too.  Because the second requirement of

4    admissibility under Fed. R. Evid. 414 has been satisfied as to the cross

5    admissibility of the six count's direct evidence, the Court will consider the third

6    prong of the rule's test and analyze the *Lemay* factors below.

7        *6.  Conclusion Regarding Second Requirement of Fed. R. Evid. 414*

8        The Court finds the following proffers meet the second requirement of

9    admissibility under Fed. R. Evid. 414: the prior uncharged sexual assaults of A.G.

10   and M.M., the testimony of T.W. regarding Defendant's prior possession of child

11   pornography, the testimony of T.W. regarding Defendant's directions for her to

12   record individuals, including minors, urinating in public restrooms, Exhibits 16 and

13   69 through 72 (with limitations), and the direct evidence of the six counts as laid

14   out by the United States at the February 28 hearing.

15       The Court finds that the following do not meet the second requirement of

16   admissibility and denies the United States' motion with respect to T.W.'s

17   testimony regarding Defendant's directions for her to "upskirt" adult women,

18   Exhibits 17 and 18, and any portions of Exhibits 16 and 69 through 72 in which the

19   sole person depicted is an adult.

20

ORDER – 32

**D. Discussion Regarding whether Proffered Evidence is Relevant**

1

2        The United States seeks to admit the testimony of A.G., M.M., and T.W.,

3   Exhibits 16 and 69 through 72, and all of the exhibits directly supporting the six

4   counts under Fed. R. Evid. 414 to demonstrate Defendant's "sexual interest in

5   minor children or young girls and a propensity to seek [child pornography]."  ECF

6   No. 155 at 19.  The United States argues that such evidence would also show

7   Defendant's propensity to produce or attempt to produce child pornography.  ECF

8   No. 118 at 6.  Evidence that Defendant has committed child molestation as defined

9   under Fed. R. Evid. 414 in the past tends to make it more likely that Defendant has

10   committed the charged crimes.  *Doe by Rudy–Glanzer*, 232 F.3d at 1268 ("[I]t is

11   generally accepted that a defendant with a propensity to commit acts similar to

12   those charged is more likely to have committed the charged act than another and

13   therefore such evidence is relevant and in conformity with the standards set out in

14   Fed. R. Evid. 401 & 402.").  Thus, the evidence the Court has ruled meets Fed. R.

15   Evid. 414's first two requirements is also relevant.  *See id.*

16        While the testimony of A.G., M.M., and T.W., Exhibits 16 and 69 through

17   72 (as limited), and all of the exhibits directly supporting the six counts are

18   relevant, this evidence is still subject to Fed. R. Evid. 403.  *Lemay*, 260 F.3d at

19   1022.  The Court now turns to the *Lemay* factors to assess whether the relevant

20   evidence's probative value is substantially outweighed by unfair prejudice.

ORDER – 33

**E. Discussion Regarding *Lemay* Factors**

*1. Similarity of the Other Acts to the Acts Charged*

The United States seeks to introduce Exhibits 1 through 11 to support Count 1. ECF No. 155 at 3-5. The majority of these exhibits depict Defendant digitally penetrating or manipulating the genitals of Minor A, his then-girlfriend (prior to T.W.), who was 16 or 17 years old, or either moving her underwear to the side himself or asking her to move her underwear to the side, so her genitalia becomes visible on camera. Exhibit 2 includes footage of Defendant filming Minor A after she has showered, and she appears annoyed that he is filming her. At one point, he forcefully directs her to, "turn the fuck around" to which she complies. Exhibit 6 also includes footage of Defendant beginning to film when Minor A did not seem to expect it. In this exhibit, she is nude and picking up clothing before walking into her closet. Additionally, at least one contains footage of a separate young woman (who the United States does not contend is a minor), who gets visibly upset and runs from the room when she discovers Defendant had been filming without her knowledge or consent. In Exhibits 1 to 11, there is a general focus on Minor A's lower half. Even when she is standing naked in front of him, the focal point is on her genitalia. The same is true of the videos in which she is clothed at the start and Defendant either moves her underwear himself or asks her to move it so her genitalia becomes exposed on camera.

The United States seeks to introduce Exhibits 12 through 15 and their subparts to support Count 2.  ECF No. 155 at 5-6.  Exhibits 12, 12a, 13, 13a, 13b, 14, 14a, 14b, 15, and 15a do not depict the file paths of where Exhibits 12 through 15 and their subparts were found on Defendant's external hard drive, as well as descriptors within emails or PDFs of the actual images.  ECF No. 155 at 5-6.  For example, one of these exhibits "welcomes" the viewer to "Fairywood."  Exhibits 12b, 13c, 13d, 13e, 14c, 15b, and 15c contain young girls, some of whom are prepubescent.  Most of these exhibits are collages of prepubescent girls in costumed lingerie (like fairies or other themes) in an array of sexually provocative poses and in various state of undress such that their undeveloped breasts, pubic areas, genitals, and anuses are visible in different images.

Exhibits 16 and 69 through 72 do not directly support any of the six counts.  ECF No. 155 at 6-7, 18-19.  The United States seeks to introduce these exhibits solely to show Defendant's propensity to commit the charged crimes.  ECF No. 155 at 6-7, 18-19.  Exhibits 66, 67, and 68 are intended to support Counts 3, 4, and 5, respectively.  ECF No. 155 at 17-18.  Yet, these exhibits—Exhibit 16 and 66 through 72—are all similar to one another.  They all contain footage of minor children using the toilet in a public place.  While some of these videos capture the side of young girls' unclothed buttocks, some capture prepubescent girls' pubic areas and at least one prepubescent boy's genitalia.  Throughout these videos, the

camera faces the toilet such that the focal point of the majority of the videos are focused on the lower half of the children.

The United States seeks to introduce Exhibits 19 through 63 as evidence of Count 6.  ECF No. 155 at 7 to 17.  Exhibit 19 depicts a sleeping prepubescent girl whose underwear is moved to the side by an adult male hand so her genitalia becomes visible for the camera.  Exhibit 20 appears to depict the same girl except the adult male hand is digitally manipulating her genitalia.  Similarly, Exhibits 21 and 22 include depictions of prepubescent girls' underwear being moved to the side by an adult male hand so their genitalia becomes exposed on the camera. Exhibits 23 through 63 depict young girls, most of whom are prepubescent, and in most of these photos and videos, the young girls' genitalia are visible and the focal point of the photo or videos.  None of these photos or videos include young boys.

Exhibits 28, 35, and 50 contain such depictions in bathrooms, and Exhibit 28 contains young girls in the shower who are nude with wet hair as if they had just bathed.  These exhibits bare similarities to the videos filmed in the public restrooms, as well as Exhibit 2.  Some of Exhibits 23 to 63 include adult males digitally penetrating the young girls' vaginas or raping the young girls.  Exhibits 26, 39, 53, 54, and 56 include such depictions.  These exhibits are similar to Exhibit 1.  Exhibits 62 and 63 include depictions of prepubescent girls performing oral sex on adult males.  These are similar to Exhibit 11.  Some of the videos' file

ORDER – 36

paths or titles contain the ages of the purported ages of the girls, which include ages 7 through 15. Some of the videos also have the word "lolita" in the title or the file paths.

The Court finds that the evidence supporting the six counts is considerably similar to A.G., M.M., and T.W.'s testimony. Count 1 entirely involves a pubescent minor. However, the Court notes that Minor A appears younger than 16 or 17 in Exhibits 1 to 11. In these exhibits, there is little to no hair on or near her pubic area. When Defendant is filming her, he focuses the camera on Minor A's lower half even when her whole body is in frame, and the majority of the videos contain footage of Defendant manipulating and/or digitally penetrating Minor A's vagina. This is similar to numerous of the exhibits supporting Count 6, which also include adult male hands manipulating and/or digitally penetrating young girls' vaginas. Additionally, Exhibit 28 is similar to that of Exhibit 2 in that the prepubescent girls depicted in Exhibit 28 have wet hair as if she had just bathed like Minor A had in Exhibit 2. Moreover, a few of the images supporting Count 6 were taken in a bathroom like those in Exhibits 16, 66 through 70, and 72.

Defendant's filming of Minor A appears surreptitious at times. In Exhibit 2, Minor A appears visibly agitated that he is filming her while she is nude and appears she did not expect him to be filming her. There is also a video that contains an additional person who was clearly unaware that Defendant was filming

her when she was partially unclothed and became visibly upset upon discovering that fact. Additionally, there are at least two videos where Defendant is already filming when he comes up to Minor A and moves her underwear to the side himself or he asks her to do it, so he can see her genitalia on camera. The surreptitiousness of the filming which is captured in some of the exhibits involving Minor A is similar to the videos that Defendant purportedly directed T.W. to film in the restrooms: Exhibits 16, and 66 through 72.

Moreover, the sexual assaults of A.G. and M.M. are substantially similar to certain images that the United States intends to offer in support of Count 6, specifically, Exhibits 19 and 20. These two images depict a sleeping prepubescent girl whose underwear is moved to the side by an adult male hand so her genitalia becomes visible for the camera and that same male hand digitally manipulating her genitalia. A.G. and M.M. were also sleeping prepubescent girls when Defendant allegedly digitally manipulated or penetrated them.

There is commonality throughout most of the exhibits (all but one) in that there is a primary focus on minor girls' (most of whom are prepubescent) pubic area or genitals, and either depictions of manipulation of genitals or vaginal penetration or a surreptitiousness involved. This commonality exists with respect to the testimony of A.G., M.M., and T.W. as well. Given the similarities of sex acts depicted in Exhibits 1 through 11 (videos filmed by Defendant involving

Minor A), Exhibits 19 through 63 (images and videos of mostly prepubescent girls), and within the testimony of A.G. and M.M. as well as the surreptitiousness of the filming of mostly prepubescent girls in Exhibits 16, 69, 70, and 72 as well as some of the videos involving Minor A, the Court finds the evidence is all substantially similar. This factor weighs in favor of admissibility as to these exhibits.

Exhibit 71 is the *only* exhibit that includes a young boy. The United States proffered that T.W. was directed to film young girls. While Exhibit 71 meets Fed. R. Evid. 414's prerequisites, it is substantially dissimilar to other exhibits. The probative value is exceeded by the potential prejudicial impact and confusion. Moreover, given the number of exhibits offered to show the surreptitious recording of minors in the restrooms, the Court finds it cumulative. Accordingly, the Court excludes Exhibit 71 under Fed. R. Evid. 403.

### 2. *The Closeness in Time of the Other Acts to the Acts Charged*

The sexual assaults of A.G. and M.M. occurred sometime between 2001 and 2003. T.W. observed Defendant downloading child pornography in approximately 2003. Defendant is charged with attempting to produce or producing child pornography in 2007, 2008, and 2009. Defendant is charged with receiving child pornography in 2017 and possessing child pornography in 2020.

The Ninth Circuit has noted the lack of blackletter law on remoteness in time. *United States v. Thornhill*, 940 F.3d 1114, 1120 (9th Cir. 2019). In *Thornhill*, the Ninth Circuit noted that the district court would have been within its prerogative to find this factor in favor of the government given the prior acts occurred between one and four years before the charged conduct. 940 F.3d at 1120. *LeMay* concerned an 11-year difference. 260 F.3d at 1029. The Ninth Circuit has found the district court's determination this factor was neutral to be reasonable given the 11-year time difference. *Id.*

T.W. observed Defendant download child pornography approximately four years before the first charged attempted production or actual production of child pornography. The sexual assaults occurred 4 to 8 years before the first attempted production or actual production of child pornography. The prior possession and the prior uncharged sexual assaults occurred approximately 14 to 16 years before Defendant's receipt of child pornography and 17 to 19 years before Defendant's possession of child pornography. The Court notes that although the production counts are alleged to have occurred in 2007 to 2009, those depictions were located in a search of Defendant's digital devices in 2020, thus indicating he maintained possession of those items for the intervening 13 years. The combined history of the uncharged and charged conduct demonstrates a consistent history of sexual molestation related behavior over approximately 17 years. Given the proximity in

time of the prior uncharged sexual assaults and prior possession of child

pornography to the earlier charges (Counts 1 and 3 through 5) and that Defendant

kept videos that the United States seeks to admit to support these counts in his

possession for approximately 13 years, the Court finds this factor in favor of

admissibility.

### 3.  The Frequency of the Other Acts

There are 11 separate videos involving Minor A, which are alleged to have

been filmed over approximately one year.  Similarly, the filming of Exhibits 66

and 67 are alleged to have occurred on the same day, while Exhibit 68 is alleged to

have been filmed approximately one month later.  However, there exist at least

four other potentially admissible similar videos (Exhibits 16 and 69, 70, and 72)

that were purportedly filmed around the same time period.  Contrarily, A.G. and

M.M. each describe a single instance in which Defendant touched them.  Given the

single alleged incident involving A.G and M.M., the court finds that this factor is

neutral as to these incidents.  Given that the alleged photos and videos were found

on a single external hard drive which Defendant was in possession of on April 23,

2020, and that Defendant displayed a course of conduct that was consistent over

approximately 20 years, this factor weighs in favor of admissibility of the

remaining evidence offered under Fed. R. Evid. 414 and as to the cross-

admissibility of the evidence supporting each specific count.

*4. The Presence or Lack of Intervening Circumstances*

The parties do not make argument regarding this factor. Accordingly, the Court finds this factor is neutral.

*5. The Necessity of the Other Acts Evidence Beyond the Testimonies Already Offered at Trial*

Given that all but five of the exhibits support a count directly, the addition of Exhibits 16, 69, 70, and 72 do not appear necessary for the United States to make its case. The same can be said with respect to A.G. and M.M.'s testimony. However, "[p]rior acts evidence need not be *absolutely necessary* to the prosecution's case in order to be introduced; it must simply be helpful or *practically necessary*." *Id.* (emphasis in original). A.G. and M.M.'s testimony and Exhibits 16, 69, 70, and 72 have the potential to show Defendant's propensity to commit acts similar to those charged, which would be helpful to the jury.

Contrarily, T.W.'s testimony is necessary to explain her actions and the purported directions Defendant gave her when she recorded Exhibits 16, 66 through 70, and 72. Said differently, T.W.'s testimony is "necessary to fill in the details that made [some of] the prior [acts] relevant." *Id.* at 1030. Given that T.W.'s testimony is necessary and that A.G. and M.M.'s testimony and Exhibits 16, 69, 70, and 72 would be helpful to the jury, this factor weighs in favor of admissibility.

ORDER – 42

### 6. Conclusion as to Lemay Factors

In weighing the *Lemay* factors, the Court finds that on balance the evidence's probative value is not substantially outweighed by any of Fed. R. Evid. 403's listed concerns. The Court finds that A.G. and M.M.'s testimony, T.W.'s testimony as detailed above, Exhibits 16, 69,[15] 70, and 72 as limited above are admissible at trial. Additionally, the Court finds that the evidence which directly supports each count is cross admissible to every other count under Fed. R. Evid. 414 particularly given all the images offered to support the six charged counts were located during a search of Defendant's digital devices in April of 2020.

As ruled above, the Court finds that Exhibit 71 is substantially dissimilar to the other exhibits and thus, the probative value is minimal and substantially outweighed by the possible prejudicial impact. Accordingly, the Court excludes Exhibit 71 under Fed. R. Evid. 403.

---

[15] As noted above, Exhibits 16 and 69 depict the same events but were found in different locations on the digital device. The Court finds that showing both to the jury would be cumulative. The United States may choose to offer either Exhibit 16 or 69 at trial.

ORDER – 43

### DEFENDANT'S MOTION TO SEVER

Defendant moves to sever the counts and requests they be tried in three separate trials as follows; he requests that Count 1 be tried in by itself, Counts 2 and 6 together in a second trial; and Counts 3, 4, and 5 together in a third trial.

**A. Legal Standard**

Requests for severance under Rule 8 and Rule 14 have different considerations for the Court. *Compare* Fed. R. Crim. P. 8 *with* Fed. R. Crim. P. 14; *see United States v. Prigge*, 830 F.3d 1094, 1098 (9th Cir. 2016). "Rule 8 is concerned with the propriety of joining offenses in the indictment," while "Rule 14 is available 'as a remedy for prejudice that may develop during the trial[.]'" *United States v. Jawara*, 474 F.3d 565, 572 (9th Cir. 2007) (quoting *United States v. Friedman*, 445 F.2d 1076, 1082 (9th Cir. 1971)).

*1. Fed. R. Crim. P. 8*

The offenses charged must be "of the same or similar character," "based on the same act or transaction," or "connected with or constituting parts of a common scheme or plan." Fed. R. Crim. P. 8(a). This rule's three conditions are "phrased in general terms," but they "are not infinitely elastic." *Jawara*, 474 F.3d at 573 (internal quotation marks omitted). Yet, Fed. R. Crim. P. 8 may be "broadly construed in favor of initial joinder" because Fed. R. Crim. P. 14 provides a remedy for prejudicial joinder. *Friedman*, 445 F.2d at 1082. "[T]he validity of the

1    joinder is determined solely by the allegations in the indictment." *Jawara*, 474

2    F.3d at 572; *United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995) ("In

3    making our assessment, we examine only the allegations in the indictment.").

4            Defendant states that "it is questionable whether there is a misjoinder of

5    offenses.  The connection between count 1 and count 2 is tenuous at best."  ECF

6    No. 84 at 3.  Defendant then discusses the difference between Counts 1 and 2.

7    ECF No. 84 at 3.  Defendant mentions Fed. R. Crim. P. 8 again in his supplemental

8    brief but does not actually analyze whether the six charges were improperly joined.

9    *See* ECF No. 119.  Indeed, Defendant's challenge of joinder here cannot be

10   considered an objection as Defendant cites no authority in support of his

11   contention that these offenses were "questionabl[y]" misjoined.[16]  This, in and of

12   itself, is enough to dispel of Defendant's "objection."  *See United States v. Smith*,

13   795 F.2d 841, 850 (9th Cir. 1986) ("A motion for severance under Rule 14 does

14   not preserve a Rule 8 misjoinder objection for appeal.") (collecting cases).

15   Accordingly, the Court will not analyze this argument in this Order.

16

17

_____

18   [16] Even if Defendant had properly challenged the validity of joinder under Fed. R.

19   Crim. P. 8, the Court cannot presume prejudice whenever Fed. R. Crim. P. 8's

20   requirements have not been satisfied.  *Jawara*, 474 F.3d at 573.

ORDER – 45

2. *Fed. R. Crim. P. 14*

"Federal Rule of Criminal Procedure 14 governs the severance of both defendants and charges." *United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994). This rule permits the trial court to "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires" if the joined offenses "appear[] to prejudice a defendant[.]" Fed. R. Crim. P. 14(a). Fed. R. Crim. P. 14 acknowledges severance may be appropriate "to avert prejudice to a defendant" even if the counts were properly joined under Fed. R. Crim. P. 8. *Vasquez–Velasco*, 15 F.3d at 845. The decision to sever counts "is left to the sound discretion of the trial judge, to be exercised in the light of the potential prejudice to the defendant on the one hand and the obvious interest of judicial economy on the other." *United States v. Kennedy*, 564 F.2d 1329, 1334 (9th Cir. 1977); *United States v. Ragghianti*, 527 F.2d 586, 587 (9th Cir. 1975) ("The trial judge has great discretion in ruling on Rule 14 motions, and review on appeal is limited to whether '. . . the joint trial (was) so prejudicial . . . as to require the exercise of that discretion in only one way, by ordering a separate trial . . .'") (quoting *Parker v. United States*, 404 F.2d 1193, 1194 (9th Cir. 1968), *cert. denied*, 394 U.S. 1004 (1969)).

"Rule 14 sets a high standard for a showing of prejudice." *Vasquez–Velasco*, 15 F.3d at 845. Indeed, on appeal a "'defendant has the burden of

ORDER – 46

1   proving that the joint trial was manifestly prejudicial,' such that the 'defendant's

2   right to a fair trial was abridged.'" *Jawara*, 474 F.3d at 579 (quoting *United States*

3   *v. Lewis*, 787 F.2d 1318, 1321 (9th Cir.), *opinion amended on denial of reh'g*, 798

4   F.2d 1250 (9th Cir. 1986)).  To be entitled to severance here, Defendant must show

5   that a joint trial is "so manifestly prejudicial as to require the trial judge to exercise

6   his discretion in but one way, by ordering a separate trial."  *United States v.*

7   *Abushi*, 682 F.2d 1289, 1296 (9th Cir. 1982).

8   **B. Discussion**

9       "Joinder is not prejudicial where 'all of the evidence of the separate count[s]

10  would [still] be admissible upon severance.'"  *Prigge*, 830 F.3d at 1098 (quoting

11  *United States v. Johnson*, 820 F.2d 1065, 1070 (9th Cir. 1987)).  For the reasons

12  detailed in the Court's rulings above, the evidence which directly supports each

13  count is cross admissible as to every other count.  Accordingly, all of the evidence

14  of the six, separate counts would still be admissible as to any severed counts.

15  Thus, a single trial involving all six counts cannot prejudice Defendant as a matter

16  of law.  The same can be said about the Fed. R. Evid. 414 evidence.  The Court

17  ruled as admissible A.G. and M.M.'s testimony, some of T.W.'s testimony, and

18  Exhibits 16, 69, 70, and 72 (with limitations).  The Court ruled this evidence is

19  admissible as to all six counts, so this evidence would be admissible as to any

20  severed counts as well.

ORDER – 47

1    Moreover, judicial economy supports the counts being tried together.  All of

2    the exhibits offered in support of Counts 1 through 6 were located during a search

3    of Defendant's digital devices in April 2020 and the resulting forensic

4    examination.  Three separate trials (as Defendant requests) would require the same

5    witnesses to testify as to these facts numerous times, so it would be significantly

6    repetitive.

7        Defendant argues that the evidence that the United States seeks to introduce

8    under Fed. R. Evid. 414—A.G. and M.M.'s testimony in particular—will be

9    emotionally charged and unfairly prejudice him.  It is undisputed that the evidence

10   will be emotionally charged.  However, this fact alone does not unfairly prejudice

11   Defendant.  The Ninth Circuit has held the district court did not abuse its discretion

12   in denying a defendant's motion to sever where the defendant did not "present[ ]

13   any reasons, other than the emotionally-charged nature of [one of the] murder[s],

14   as to why the jury would be unable to consider separately the evidence that applies

15   to the two pairs of murders." *Vasquez-Velasco*, 15 F.3d at 846–47.  While the

16   evidence in this case will undoubtedly be emotionally charged, this reason is

17   insufficient to meet the showing of prejudice necessary for severance under Fed. R.

18   Crim. P. 14.  However, the Court will note that the United States may not place

19   undue emphasis on the testimony of A.G. and M.M.  *Smith*, 795 F.2d at 851

20   ("[T]he district court's refusal to sever was not manifestly prejudicial, [because

ORDER – 48

1    b]oth the prosecution and the court took great pains to avoid emphasizing the

2    presence of the gun or linking it to the [child] pornography.").

3         Defendant also argues that the introduction of the propensity evidence will

4    diminish the jury's ability to consider the evidence that applies to the six, separate

5    counts which will unfairly prejudice him.  This argument likewise fails given the

6    similarities of the conduct underlying the charged counts, the anticipated testimony

7    of A.G., M.M., and T.W., and Exhibits 16 and 69 through 72.  The Ninth Circuit

8    has rejected a similar argument.  *See United States v. McLeod*, 755 F. App'x 670,

9    675 (9th Cir. 2019) (not reported).  "McLeod's underlying conduct as to all

10   charges was sufficiently related such that the nature of the evidence, within the

11   context of this case, was not unduly inflammatory."  *Id.*  The underlying conduct

12   supporting all six charges and the actions in the Fed. R. Evid. 414 evidence is

13   sufficiently similar such that the Court finds that within the confines of this case, it

14   will not be unfairly prejudicial.  Thus, Defendant is not entitled to severance under

15   Fed. R. Crim. P. 14.

16        In his final argument, Defendant contends that he will be unable to present a

17   defense and testify as to Count 1 if this count is not severed.  *See* ECF No. 119 at

18   6.  This argument also fails.  Severance is not required due to a defendant's right to

19   be free from self-incrimination "until the defendant makes a convincing showing

20   that he has both important testimony to give concerning one count and a strong

need to refrain from testifying on the other." *United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980).  Defendant cannot make such a showing.

Defendant previewed his defense as to Count 1 in his prior Motion to Dismiss, ECF Nos 69, 75.  He argued that the sexual relationship with Minor A—who was sixteen at the start of the relationship—was consensual under state law[17], and therefore any related documentation of that sexual relationship with Minor A was also consensual.  ECF No. 75 at 2, 2-3, 3-4.  The Court presumes Defendant will testify to the consensual nature of their relationship at trial.  *See* ECF No. 119

---

[17] In Washington, "[a] person is guilty of rape of a child in the third degree when the person has sexual intercourse with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim."  RCW 9A.44.079. Defendant asserts that because Minor A was older than 16 years old, Defendant's sexual relationship with Minor A was legal under state law. *Id.*  However, Washington law criminalizes the sexual exploitation of a minor, just as federal law does.  RCW 9.68A.040; 18 U.S.C. § 2251.  Thus, although Defendant's sexual relationship with Minor A may have been legal under state law, documenting such relationship in photos or videos is not.  *Laursen*, 847 F.3d at 1034.

ORDER – 50

at 2-3 ("The alleged visual depictions involve the consensual sexual relationship of [Defendant] and Minor A . . . during a one-year slice of their 8-year long dating relationship.  The sex is consensual and legal.").  This argument has been expressly rejected by the Ninth Circuit.  *See United States v. Laursen*, 847 F.3d 1026 (9th Cir. 2017).  While Defendant's sexual relationship with Minor A may have been legal under Washington law, it does not legitimize the filming of a minor under 18 years old engaged in a plethora of sexual acts.  *Id.* at 1036.  Accordingly, the Court will not sever this charge based on his assertion that he will testify to facts that do not constitute a legally cognizable defense to the charge.  To do so would run afoul of the Ninth Circuit's holding in *Laursen*.

For the reasons stated above, the Court denies Defendant's Motion to Sever.

Accordingly, **IT IS HEREBY ORDERED:**

**1.**  Defendant's Motion to Dismiss Counts 3, 4, and 5, **ECF No. 116**, is **GRANTED in part** and **DENIED in part** in the manner stated above.

**2.**  United States' Motion for Admission of Evidence Pursuant to Fed. R. Evid. 414 and its amendment, **ECF Nos. 83, 118**, are **GRANTED in part** and **DENIED in part** in the manner stated above.

**3.**  Defendant's Motion to Sever Offenses and the supplement, **ECF Nos. 84, 119**, are **DENIED.**

**4.** The Clerk's Office is directed to **terminate** Defendant's Motion in Limine RE: Fed. R. Evid. 414 (Supplemental), **ECF No. 117**, for the reason stated in footnote 1.

      **IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

      **DATED** March 19, 2023.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER – 52